UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JASPER POLLINI,                                                  Plaintiff,

v.                                                  Civil Action No. 3:14-cv-689-DJH-RSE

AMY ROBEY, Warden,                                Defendant.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

This matter is before the Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1) In accordance with 28 U.S.C. § 636(b)(1)(B), the Court referred the matter to United States Magistrate Judge Regina S. Edwards for report and recommendation. (D.N. 71) Judge Edwards issued her report and recommendation on May 12, 2022, recommending that the petition be denied. (D.N. 72) Jasper Pollini timely objected to the report and recommendation. (D.N. 75) After careful consideration, the Court will adopt in full Judge Edwards's Findings of Fact, Conclusions of Law, and Recommendation and overrule Pollini's objections.

**I.**

The Court incorporates the factual and procedural history set out in its January 15, 2019 Memorandum Opinion and Order as follows:

> In 2002, Dan Ziegler awoke to find Jasper Pollini burglarizing his garage. *Commonwealth v. Pollini*, 172 S.W.3d 418, 421 (Ky. 2005). After chasing Pollini from his property, Ziegler notified his neighbor, Byron Pruitt, who armed himself and began searching the area. *Id.* Meanwhile, Pollini realized that he had forgotten his toolbox at Ziegler's home and persuaded his sister, Crystal Plank, to drive him back to the scene. *Id.* Upon their arrival, Plank and Pollini saw a flashlight coming toward their vehicle, prompting Pollini to fire his gun out the window. *Id.* The bullet pierced Pruitt's throat, and Pruitt died shortly thereafter. *Id.* at 422.

1

> Following trial in 2003, a Jefferson Circuit Court jury convicted Pollini of murder, burglary in the first degree, burglary in the second degree, and receiving stolen property. (D.N. 20, PageID.121) The trial judge sentenced Pollini to life without the possibility of parole for 25 years. (D.N. 39, PageID.1559) Thereafter, the case proceeded down a lengthy path of appeals.
>
> On direct appeal in 2005, the Kentucky Supreme Court upheld Pollini's conviction but vacated the case for a new sentencing hearing; the Jefferson Circuit Court subsequently reduced his sentence to life. The court found that Pollini was not eligible for aggravated sentencing because he did not shoot Pruitt during or in immediate flight from the burglary. (*Id.*) After resentencing in 2006, Pollini appealed, but the Kentucky Supreme Court dismissed the appeal, finding that the trial court did not abuse its discretion in admitting videotape testimony of Ziegler's mother and that the prosecutor's closing argument was not improper. (D.N. 20, PageID.124); *Pollini v. Commonwealth*, No. 2006-SC-000835-MR, 2008 WL 203035 (Ky. Jan. 24, 2008). Next, Pollini filed a post-conviction action in state court, which the trial court and the Kentucky Court of Appeals dismissed. (*Id.*)
>
> In 2011, the Kentucky Supreme Court remanded the case to the Kentucky Court of Appeals in light of its ruling in *Hollon v. Commonwealth*, 334 S.W.3d 431, 436 (Ky. 2010), where the court agreed to recognize ineffective-assistance-of-counsel claims based on alleged deficiencies during direct appeal. On remand, the Kentucky Court of Appeals vacated Pollini's conviction based on the trial judge's violation of Kentucky Rule of Criminal Procedure 9.74, which prohibits a judge from responding to jury requests for information outside the presence of counsel. *Pollini v. Commonwealth*, No. 2009-CA-000964-MR, 2011 WL 6412052 (Ky. Ct. App. 2011). The Kentucky Supreme Court then reversed, finding the Rule 9.74 violation harmless error. *Commonwealth v. Pollini*, 437 S.W.3d 144, 153 (Ky. 2014). Accordingly, in 2014, the Kentucky Supreme Court reinstated Pollini's conviction and sentence. *Id.*

(D.N. 50, PageID.1726-28) This petition for a writ of habeas corpus followed.

In his amended habeas petition, Pollini asserted six grounds for relief. (D.N. 20, PageID.112-14) This Court denied the petition on all six grounds. (D.N. 50) On appeal, the Sixth Circuit affirmed in part and vacated in part this Court's judgment, remanding for consideration of the merits of Pollini's second and third claims for relief. (D.N. 56) Thus, before the Court are Pollini's claims that his conviction should be overturned because his appellate counsel failed to seek guilt-phase relief based on the argument that prevailed on direct appeal. (D.N. 20,

PageID.170-76) Pollini objects to the magistrate judge's recommendation that this Court once again deny Pollini's petition. (D.N. 75; D.N. 72)

## II.

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Edwards's report and recommendation to which Pollini objects.

Pollini objects to the report and recommendation's analysis of his two surviving claims for habeas relief: (1) a procedurally defaulted claim based on the jury's alleged misimpression at the guilt phase that Pollini was in immediate flight from the Ziegler burglary when he shot Pruitt, and (2) a claim of ineffective assistance of appellate counsel arising from his appellate counsel's failure to seek guilt-phase relief based on the immediate-flight issue, which Pollini argues also gives cause and excuse for the procedural default of his first argument. (D.N. 20, PageID.170-76) Both claims rise and fall on whether Pollini's appellate counsel was ineffective in not seeking to overturn Pollini's conviction on the same grounds upon which he succeeded in vacating Pollini's sentence.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Id.* at 687–88. Under *Strickland*, a defendant claiming ineffective assistance of counsel must show "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77

(2000) (quoting *Strickland*, 466 U.S. at 668, 694). "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. To succeed on a claim of ineffective assistance of counsel under *Strickland*, a petitioner must establish that his counsel's conduct was deficient in light of professional norms and that the deficient performance prejudiced his defense. *Id.* 686, 694. To satisfy the prejudice requirement, the petitioner must show with reasonable probability that but for his counsel's errors, the result would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine the court's confidence in the outcome of the proceedings. *Id.*

Pollini does not object to the factual findings in the report and recommendation,[1] but raises two specific objections to Judge Edwards's analysis of his ineffective assistance of appellate counsel claims: (1) that the report erred in its analysis of his appellate counsel's effectiveness (D.N. 75, PageID.1972-83), and (2) that the magistrate judge underestimated Pollini's degree of prejudice from alleged errors by his appellate counsel (*Id.*, PageID.1983-88).[2] The Court therefore reviews *de novo* both prongs of Pollini's ineffective assistance of counsel claims. *See* 28 U.S.C. § 636(b)(1)(C).

---

[1] Pollini concedes that the "Magistrate Judge's findings of fact are accurate, as far as they go" and does not raise any specific objections to the factual findings. (D.N. 75, PageID.1959-60)
[2] Pollini also objects to the report's reliance on the sufficiency of the evidence standard in reaching its conclusion that he was not prejudiced by the failure to seek a new trial in addition to resentencing as a remedy for trial errors. (D.N. 75, PageID.1967-72) This challenge is best addressed when considering Pollini's other objections to the prejudice analysis, particularly since the Court agrees with the magistrate judge that Pollini was not prejudiced by any error because there was sufficient evidence to support a jury finding that he committed intentional murder.

4

A.  **Effectiveness**

Pollini objects to the report's analysis of the effectiveness prong of *Strickland*. (D.N. 75, PageID.1972-83)  Appellate "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)). It is well established that "the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *Id.* The Sixth Circuit applies a non-exhaustive eleven-factor analysis in determining where the decision not to pursue a given claim amounts to constitutionally ineffective assistance of counsel. *See Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).  Pollini concedes that several of these factors, including his attorney's wealth of experience and familiarity with the facts of the case, weigh against his habeas petition. (D.N. 75, PageID.1981)  Nevertheless, Pollini asserts that the report and recommendation erred in finding his counsel effective because, he argues, the guilt-phase argument based on the "immediate flight" theory was significant and obvious, clearly stronger than the issues that were raised on appeal, and not dealt with in other assignments of error—in short, that the claim was such a clear winner that the decision to omit it was "an unreasonable one, which only an incompetent attorney would adopt."  (D.N. 75, PageID.1972-74 (quoting *Mapes*, 171 F.3d at 427-28); D.N. 72, PageID.1936-42)  After careful consideration, this Court cannot agree.

The Kentucky Supreme Court had to distinguish established precedent in reversing Pollini's sentence. *See Pollini*, 172 S.W.3d at 430 (discussing *Baker v. Commonwealth*, 860 S.W.2d 760 (Ky. 1993)).  On Pollini's direct appeal, Pollini and the Commonwealth advanced alternate views of the prevailing precedent defining "immediate flight." (D.N. 28-3, PageID.505-10, 577-83) The Kentucky Supreme Court had previously held that a burglar apprehended with a firearm fifteen to twenty minutes after the burglary, within half a mile of the scene of the burglary,

5

was in "immediate flight" and thus still engaged in first-degree burglary. *See Baker*, 860 S.W.2d at 761. Pollini shot Pruitt approximately thirty minutes after he initially fled Ziegler's garage, in the vicinity of the burglary, while Pruitt was searching for the burglar. *See Pollini*, 172 S.W.3d at 429. To avoid the aggravator, let alone overturn his conviction, Pollini had to distinguish his case from the facially similar facts of *Baker*. *See Baker*, 860 S.W.2d at 761. Where the governing law on a claim is unclear or unfavorable, as here, appellate counsel's failure to bring that claim is unlikely to constitute ineffective assistance of counsel. *See, e.g.*, *Thompson v. Warden*, 598 F.3d 281, 286-88 (6th Cir. 2010) (holding that "[a]lthough prudent counsel would have preserved a *Blakely* claim under these circumstances," failure to bring the claim on appeal in case controlling law changed was "not constitutionally unreasonable" (quoting *Benning v. Warden*, 345 F. App'x 149, 157 (6th Cir. 2009))). This is true even where a co-defendant successfully challenges their conviction by advocating for a new interpretation of binding precedent.³ *Harper v. United States*, 792 F. App'x 385, 390 (6th Cir. 2019) (holding that "[w]hile the disparity between Harper's and his co-defendants' situations may appear unfair, he nevertheless cannot meet *Strickland*'s high burden to prove ineffective assistance of counsel" for his appellate counsel's failure to raise the same issue in Harper's petition for certiorari). And as always, this Court must "affirmatively

---

³ Pollini asserts that his appellate representation was clearly ineffective because his co-defendant, Crystal Plank, overturned her convictions for facilitation of first-degree burglary and complicity to second-degree manslaughter based on the erroneous definition of "immediate flight" and the prosecution's improper characterization of its impact on Plank's culpability. (D.N. 75, PageID.1966, 1976-78) The Kentucky Supreme Court found that Plank's complicity-to-manslaughter conviction was supported by sufficient evidence and so would ordinarily stand despite the erroneous "immediate flight" jury finding. *Plank v. Commonwealth*, No. 2003-CA-001861-MR, 2005 WL 1313838 *4, *7 (Ky. Ct. App. 2005). The court vacated her conviction on the sole basis that the prosecution had told the jury that it must convict Plank on all counts if it found that Plank intended to help Pollini retrieve the toolbox. *Id.* at *8. Thus, despite Pollini's assertions to the contrary, Plank's prosecutorial-misconduct argument has little to do with Pollini's argument that the jury might have convicted him of murder because it believed he was in immediate flight from the burglary.

entertain the range of possible reasons [Pollini's] counsel may have had for proceeding as [he] did." *Washington v. McQuiggin*, 529 F. App'x 766, 770 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)).

Pollini's counsel challenged the scope of *Baker* and the definition of "immediate flight" where they were directly implicated: the jury's sentencing-phase finding that Pollini was still engaged in the Ziegler burglary when he shot Pruitt. Because Pollini was in a car on Pruitt's property when he shot Pruitt, not in Ziegler's garage, the jury must have based its aggravating-circumstance finding on the conclusion that Pollini was in "immediate flight" from the burglary when the shooting occurred. *Pollini*, 172 S.W.3d at 429-31. This forced the Kentucky Supreme Court to grapple with the definition of "immediate flight," and the court accordingly narrowed the potential scope of *Baker*. *Id.*

By contrast, the Kentucky Supreme Court would have been able to deny an appeal of Pollini's murder conviction on alternative grounds and avoid re-defining "immediate flight." Pollini's conviction could have rested on a finding that Pollini had intentionally shot Pruitt—a finding that the court held was supported by sufficient evidence—or that firing into the dark in the direction of a flashlight constituted wanton disregard for Pruitt's life. *Id.* at 426. Rather than revisiting its earlier decision, the Kentucky Supreme Court may have simply found that the conviction was supported by sufficient evidence, as it did in addressing the challenge to Pollini's first-degree-burglary conviction. *Id.* at 432. There was thus a "conceivable benefit" to framing the issue in the context of the penalty-phase aggravator finding rather than the guilt phase, and Pollini cannot overcome the presumption that under the circumstances, omitting the argument "might be considered sound [appellate] strategy." *Strickland*, 466 U.S. at 689; s*ee Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006).

7

Pollini's counsel brought a successful direct appeal that overturned Pollini's sentence, making new law in the process. *Pollini*, 172 S.W.3d at 430-31. This Court cannot say that the decision not to dilute the winning argument with a related, weaker argument fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

**B.     Prejudice**

The Court agrees with the report and recommendation that even if Pollini could show that his counsel was ineffective, he cannot establish prejudice. (D.N. 72, PageID.1942-46)  There is no reasonable probability that the Kentucky Supreme Court would have overturned Pollini's murder conviction based on an argument that the jury improperly believed that Pollini was in immediate flight from the burglary when he shot Pruitt. *See Strickland*, 466 U.S. at 694.

As discussed above, Pollini argues that his appellate counsel should have asked the Kentucky Supreme Court to overturn his conviction, not just his sentence, based on the lack of evidence that he was in "immediate flight" from the burglary when he shot Pruitt. (D.N. 75, PageID.1983-87; D.N. 20, PageID.176-77)  Pollini's claim on direct appeal was couched as a challenge to the trial court's denial of his motion for a directed verdict as to first-degree burglary. *See Pollini*, 172 S.W.3d at 428. In claim three of his habeas petition, Pollini argues that his appellate counsel was ineffective for failing to "close the deal" on the directed-verdict claim and that this omission was prejudicial because "Pollini was entitled to a new trial had counsel merely asked for it" on the same grounds as Pollini's sentence had been vacated. (D.N. 20, PageID.176)

Yet a claim for a new trial based on the "immediate flight" issue would have been analyzed very differently than the claim for resentencing. The jury's aggravator finding was premised explicitly upon the theory—rejected by the Kentucky Supreme Court on appeal—that Pollini was in "immediate flight" from the Ziegler robbery when he shot Pruitt. *Pollini*, 172 S.W.3d at 430-

31. This finding automatically lacked sufficient evidence as soon as its underlying legal theory was ruled out. *Id.*

By contrast, the Kentucky Supreme Court quickly rejected the claim that reversing the aggravator required reversing the first-degree-burglary conviction as well. *See id.* at 432 (reaching the sufficiency of the evidence underlying the burglary conviction because the burglary ceased before Pollini shot Pruitt). The court affirmed that conviction, holding that "considered in its entirety, the evidence is sufficient to convince a reasonable juror that Appellant was armed with a deadly weapon during the burglary of Ziegler's garage," even though he was not in immediate flight from the burglary when he shot Pruitt.[4] *Id.*

There is good reason to believe that the court would have disposed of a claim for a new trial on the murder charge on similar grounds. Earlier in its opinion, the court held that "[w]hen viewed in the light most favorable to the Commonwealth, . . . the evidence [wa]s more than sufficient to support an inference that Appellant intentionally murdered Pruitt." *Id.* at 426. As the magistrate judge found, "a reasonable jury could find that blindly shooting a firearm into the dark, whether into the air or at the direction of a shone flashlight, creates a grave risk of death to those in the area and manifests an extreme indifference to human life." (D.N. 72, PageID.1946) Having already found that a conviction of intentional murder was supported by sufficient evidence, the

---

[4] Pollini argues that "the fact that the evidence was legally sufficient to go to the jury was not relevant to determining the strength of the appellate claim." (D.N. 75, PageID.1971) While Pollini is correct that the standard for prejudice is whether there was a reasonable probability that Pollini would have succeeded in his appeal but-for the alleged error (*Id.* (citing *Strickland*, 466 U.S. at 694)), he overlooks the likelihood that the Kentucky Supreme Court would have affirmed his conviction because it was supported by sufficient evidence. *See Pollini*, 172 S.W.3d at 432. The Court therefore agrees with the magistrate judge that, far from being irrelevant to Pollini's ineffective assistance claim, the sufficiency of the evidence analysis is fatal to Pollini's petition.

Kentucky Supreme Court would likely have found that the evidence gave rise to a reasonable inference that Pollini had wantonly caused Pruitt's death. *See Pollini*, 172 S.W.3d at 426.

In sum, any failure by Pollini's appellate counsel to seek a new trial based on the trial court's denial of a directed verdict on the aggravator did not prejudice Pollini because such a claim would have been unlikely to change the outcome: the Kentucky Supreme Court rejected the underlying reasoning in declining to grant relief based on the intentional-murder instruction or the failure to direct a verdict on first-degree burglary. *See Strickland*, 466 U.S. at 694; *Pollini*, 172 S.W.3d at 426, 432.

### III.

Pollini also objects to the magistrate judge's recommendations that the Court deny the petition without holding an evidentiary hearing and that Pollini is not entitled to a certificate of appealability. (D.N. 75, PageID.1988-89) An evidentiary hearing is not required because Pollini has not raised any factual allegations as the basis of his petition that a hearing would enable him to prove. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Moreover, since Pollini has satisfied neither the performance nor the prejudice prong of his ineffective-assistance-of-appellate-counsel claim, Pollini has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists could not debate the Court's assessment of Pollini's constitutional claims. *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Cooey v. Coyle*, 289 F.3d 882, 887 (6th Cir. 2002). Consequently, no certificate of appealability shall issue.

## IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge Regina S. Edwards (D.N. 72) are **ADOPTED** in full and **INCORPORATED** by reference herein.

(2) Pollini's objection to the Findings of Fact, Conclusions of Law, and Recommendation (D.N. 75) is **OVERRULED**.

(3) Pollini's amended petition for habeas relief (D.N. 20) is **DENIED**.

(4) A separate Judgment shall issue this date.

January 9, 2024

David J. Hale, Judge
United States District Court